Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Claims to lands in California by virtue of any right or title derived from the former government were required to be presented to the land commissioners, and authority was vested in the commissioners to decide upon the validity of such claims and to certify their decisions, with the reasons for the same, to the district attorney for the district.
 

 Applicants for such confirmations were required to present their claims to the commissioners when sitting as a
 
 *452
 
 board, but the act of Congress made no provision for notice to any adverse claimant, and the proceedings before the commissioners were -wholly ex parte unless opposed by the district attorney.
 

 Power to review such decisions was vested in the District Court, on petition of the claimant in case of rejection, or of the district attorney in case of confirmation.
 
 *
 

 Specific regulations were enacted as to the form of such petitions, and the provision was that the District Court should proceed to render judgment upon the pleadings and evidence in the case, and upon such further evidence as might be taken by the order of the said court, and that the court on application of the party against whom judgment was rendered should grant an appeal to the Supreme Court of the United States.
 

 On the fifth of May, 1852, a petition signed by the attorneys of Francisco Bolcoff and Juah Bolcoff was filed with the land commissioners, setting up title to the rancho El Refugio, as grantees of their father, José Bolcoff, and asking for a confirmation of their claim under the act of Congress passed to settle such private claims to lands in that State. They represented that the tract was granted to their father during Mexican rule by the governor of that department under the colonization laws ordained by the supreme government.
 

 Pursuant to the requirements of the act of Congress they filed with their petition their documentary evidences of title, consisting of the following documents: (1.) A paper bearing date on the seventh of April, 1841, purporting to be a grant of the rancho El Refugio to José Bolcoff.by Juan B. Alvarado, governor of the department at the date of the supposed grant, (2.) The certificate of Governor Alvarado, dated the twenty-eighth of July, 1841, stating that the grant made on the eighth of April, 1889, in favor of José Bolcoff' was approved on the twenty-second of May, 1841, by the Departmental Assembly. (3.) A document dated the twenty-
 
 *453
 
 sixth of July, 1842, purporting to be a record of juridical possession of the tract given to the supposed grantee by the proper Mexican authorities. (4.) The diseño or sketch of the tract described in the petition addressed to the governor by the original donee.
 

 Proof of the handwriting of the persons whose names purport to be signed to the documents was introduced by the petitioners, and as no question was made as to the authenticity of the documents they were received as genuine and treated as such in the hearing, and the commissioners entered a decree in favor of the petitioners, confirming the claim.
 

 Both parties concede that an appeal was taken on behalf of the United States to the District Court, but it was never prosecuted to effect and was subsequently dismissed.
 

 Patents may be issued for all claims confirmed by the commissioners where no appeal was taken, the claimant complying with the conditions specified in the thirteenth section of the act providing for the adjudication of such claims; that is, he must present to the general land office an authentic certificate of such confirmation and a plat or survey of the laud duly certified and approved by the surveyor-general. Such an application was accordingly made by the confirmees to the commissioner of the general land office, and he, on the fourth of February, 1860, issued a patent in due form to the persons in whose favor the decree was entered and to whom the certificate of confirmation was granted. Title to- the land is claimed by the appellants under that patent.
 

 Attention will now be called to the evidences of title under which the appellee claims in this case. On the thirteenth of February, 1839, three, orphans, daughters of Joaquin Castro, a deceased Mexican citizen, to wit, Maria Candida, Maria Jacinta, and Maria de los Angeles, presented their petition to Juan B. Alvarado, governor of California, asking for a grant of the rancho El Refugio. Reference of the petition was made to the administrator of the adjoining mission and he having reported, on the sixteenth of March,
 
 *454
 
 1839, that the land could be granted, as the land was not necessary to the mission, the governor, on the same day, made a provisional grant of'the same to the petitioners and referred the espediente to the prefect of the district, as was the usual course in respect to such applications. Immediate attention was given to the subject by that officer, and on the twentieth of the same month he reported to the governor that the laud was vacant., and recommended that the grant should be issued to the petitioners.
 

 Evidently the several documents constituting the complete espediente show a full compliance with all the requirements of the colonization laws, and it is quite clear that the case was so understood by the governor, as on the eighth of April, in the same year, he issued the concession in which the petitioners are declared to be the owners in fee of the land. Specific boundaries are given to the tract granted and the directions in the same document are that the espediente be reserved for the consideration of the Departmental Assembly and their due approval of the same. Due report of the proceedings was made to that tribunal, and the record shows that on the twenty-second of May, 1840, they formally approved of the grant.
 

 Satisfactory proof was introduced that Maria Candida intermarried with José Bolcoff, and that Maria de los Angeles intermarried with Joseph L. Majors. Prior to the marriage of Maria de los Angeles, the three sisters lived together as members of the family of José Bolcoff*, the husband of the elder, and Maria Jacinta continued to reside in his family on the premises until 185Ó, when she became a nun and entered a convent.
 

 By the record it appears that Joseph L. Majors, on the thirtieth of April, 1852, presented a petition to the commissioners claiming title in right of his wife to one-third of the rancho El Refugio, setting up the concession made by the governor to his wife and her two sisters, and asked that the claim might be confirmed. In support of his claim he introduced the several documents referred to as tending to show that the concession to the three sisters was a valid
 
 *455
 
 grant of the rancho; but the commissioners, on the thirtieth of January, 1855, rejected the claim, evidently proceeding upon the ground that the documents introduced by the other claimants were genuine.
 

 Apart from that consideration the commissioners were doubtless much influenced by the testimony of the governor, who was examined as a witness by the successful claimants. He admitted that he granted the rancho in the first place to the three sisters, but he stated that he made the grant at the request of Maria Candida, the wife of José Bolcoff, and that he subsequently regranted the land to her husband at her request and upon her representation that an arrangement to that effect between her husband and the husband of her other married sister had been made. His statement was that he granted the new title to José Bolcoff because the parties agreed upon it, although he admitted that neither of the other two grantees ever came before him or made any such request. Subsequent investigations led to the dis-' covery that the documents, or most of the documents, introduced in support of the claim of José Bolcoff, were forged and fraudulent, which induced the appellee, claiming title under the three sisters, to commence the preseut suit.
 

 Confirmed as the claim of José Bolcoff was at the same time that the claim of the three sisters was rejected, they did not appeal nor would they have been benefited if they had, as the claim was confirmed to the other claimants and they were not parties in that litigation and could not appeal from the decx-ee. Had all the facts and circumstances been known the unsuccessful claimant might perhaps have presented a petition to the district judge and have procured an injunction restraining the confirmees of the claim “ from suing out a patent for the same until title thereto” had been “finally decided,” but it is a sufficient answer to any such suggestion that the patent was issued before the alleged forgeries were diseovex'ed.
 

 Remediless as the appellee was at law, he instituted the present suit in the Cix’cuit Court. His theory is, as shown in
 
 the
 
 bill of complaint, that the grant was in fact made to
 
 *456
 
 the three sisters, and that their names were erased and the name of the successful claimant inserted in.the Same, and that the commissioners were induced by false swearing, forgery, and fraud, to confirm the claim to the grantees of the party guilty of all those offences, as the means of his success and of the defeat of the claim of the three sisters, to whom the rancho really belonged.
 

 All such charges are denied in the answer, but they are fully proved by the documents exhibited in the case and by such facts and circumstances as leave no doubt in the mind of the,court that the charges are true. Even the governor admits, in his deposition taken in this case, that the espediente, including the concession, was prepared in the name of the three sisters, but he states that when the titulo was prepared the wife of José Bolcoff came before him, and that upon her representation that her sisters were to receive an interest in another rancho the title-papers were made out in the name of her husband.
 

 Such a theory is highly improbable, but the much better answer to it is that it is clearly and satisfactorily disproved. Beyond all doubt the entire espediente, except the titiilo, was in the name of the three sisters, and the formal concession which was also in their name directed that the ultimate title should be issued to them and be recorded in the proper book; and discoveries made since the patent was issued show that the grant was entered in the Toma de liazon and in Jimeno’s Index.
 

 Much weight is due to those documents as evidences of title, even when they are not introduced in the particular case before the court. They were not produced before the commissioners, and it may be doubted whether they would have benefited the case of the three sisters if they had been, as their names are erased in the entry and the name of José Bolcoff' written in their place, and as no suspicion of forgery or fraud existed at that time it may be doubted whether the production of the documents would have changed the result. Conjectures in that behalf, however, are of no avail, as it now appears that all or nearly all of the title-papers intro
 
 *457
 
 duced to support that title were forged and fraudulent, showing to the entire satisfaction of the court that the equity of the case was in the three sisters.
 

 Further argument upon that topic is unnecessary as the proofs are persuasive, convincing, and decisive. Detailed reference to them is given in the opinion delivered by the Circuit Court, and.to that the parties can recur if they desire to examine the documents or the statements of the witnesses as exhibited in the depositions sent up in 'the record.
 

 Suppose that is so, still it is insisted by the appellants that the decree should be reversed because the decree of the commissioners, as they contend, was final and conclusive between the original claimants. Unquestionably it is a general rule that when jurisdiction is delegated to a tribunal over a subject-matter, and its exercise is confided to their discretion, the decision of the matter, in the absence of fraud, is in general valid and conclusive. Even fraud will not in every case open the judgment or decree to review where the proceeding is not a direct one, but it is not important to enter much into that field of inquiry, as the fifteenth section of the act under which the commissioners were appointed provides that the final decrees rendered by the commissioners or by the District or Supreme Court of the United States, or any patent to be issued under the act, shall be conclusive between the United States and the said claimants only, and shall not affect the interests of third persons.
 
 *
 

 Nothing more is contemplated by the proceedings under that act than the separation of the lands which were owned by individuals from the public domain.
 
 †
 

 Argument is not necessary to show that a patent in a suit at law is conclusive evidence of title against the United States and all others claiming under, the United States by a junior title. Until the patent issues the fee is in the gov
 
 *458
 
 ernment, but when it issues the legal title passes to the patentee. Persons claiming to hold the land against the patent cannot have relief in a suit at law, but courts of equity have full jurisdiction to relieve against fraud or mistake, and that power plainly extends to cases where one man has procured the patent which belonged to another at the time the patent was issued.
 
 *
 

 Where one party has acquired the legal right to property to •which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title.
 
 †
 

 Objection was taken in the court below that some of the respondents were innocent purchasers, but that objection cannot have any weight, at this time, as all the appellants before the court had notice of the title of the appellee, as clearly appears by.the report of the master. None of those who purchased without notice are embraced in the decree.
 

 Laches and the statute of limitations are set up in argument, but such defences cannot prevail where the relief sought is grounded on a charge of secret fraud, and it appears that the suit was commenced within a reasonable time after the evidence of the fraud was discovered.
 

 Decree affirmed.
 

 Mr. Justice FIELD did not sit in this case, nor participate in its decision.
 

 *
 

 9 Stat. at Large, 633.
 

 *
 

 9 Stat. at Large, 634.
 

 †
 

 United States
 
 v.
 
 Morillo, 1 Wallace, 709; Beard
 
 v.
 
 Federy, 3 Id. 493; United States
 
 v.
 
 Sanchez, Hoffman, Land Cases, 133; Martin
 
 a.
 
 United States, Id. 146; United States
 
 v.
 
 Ortega, Id. 135.
 

 *
 

 Bagnell
 
 v.
 
 Broderick, 13 Peters, 436; Patterson
 
 v.
 
 Winn, 11 Wheaton, 380.
 

 †
 

 Stark v. Starrs, 6 Wallace, 419.